IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SPORTCHASSIS, LLC,                    )
                                      )
                  Plaintiff,          )
vs.                                   )        NO. CIV-10-1035-HE
                                      )
BROWARD MOTORSPORTS OF                )
PALM BEACH, LLC, ET AL.,              )
                                      )
                  Defendants.         )

## ORDER

Plaintiff SportChassis, LLC ("SportChassis") filed this suit against defendant Broward

Motorsports of Palm Beach, LLC ("BMS") asserting claims arising out of a consignment

arrangement.[1]   SportChassis has moved for partial summary judgment on its breach of

contract, conversion, and replevin claims. It does not seek summary judgment as to its claim

for tortious interference with contract and/or prospective business relationship.   BMS has

filed a cross-motion for summary judgment which includes the latter claim.  The motions are

fully briefed.

## I.  Background

The facts material to the present motion are not in dispute.  SportChassis and BMS

entered into a contract entitled "Agreement of Understanding - Consignment/Bailment" dated

February 1, 2010 ("consignment agreement"). [Doc. #47-1].  Pursuant to that agreement,

SportChassis consigned two specialty vehicles to BMS for sale at its dealership. [Pl. Fact 1].

---

[1]*Plaintiff also asserted claims against certain individuals arising out of the same dispute.
The court concluded it lacked jurisdiction over those defendants and dismissed the case as to
them. Doc. #32.*

Plaintiff demanded return of the two consigned vehicles at some point between February 1, 2010, and August 26, 2010, but defendant did not comply. [Pl. Fact 3]. In a letter dated August 26, 2010, SportChassis's counsel again demanded return of the consigned vehicles, asserting that plaintiff had lost two sales by reason of BMS's initial refusal. [Doc. #47-3]. Defendant refused this demand as well. [Pl. Fact 8; Doc. #49-1].

The consignment agreement identifies DCFS USA LLC ("DCFS") as a lender with a security interest in the consigned vehicles. The agreement grants DCFS certain additional rights, including the right to instruct BMS to turn the consigned vehicles and their proceeds over to DCFS. [Doc. #47-1, ¶ 7]. At various times, DCFS made inquiries as to the status of the consigned vehicles but did not take any action pertinent to this case until September 2011. On September 15, 2011, DCFS instructed BMS to surrender the consigned vehicles to a SportChassis dealer in Pompano Beach, Florida, [Doc. #49-2], and defendant complied. [Doc. #49-1, ¶ 13].

SportChassis argues in its motion that BMS's refusal to return the consigned vehicles upon demand was both a breach of the consignment agreement and a conversion of the vehicles. BMS responds that, under the agreement, only DCFS could direct the disposition of the vehicles, that it did not do so until later, and that BMS's refusal to return them in the meantime to plaintiff was therefore neither a breach of the agreement nor otherwise wrongful. On that basis (and others), defendant seeks judgment on its cross-motion.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the moving party demonstrates that no

genuine dispute of material fact exists and it is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  A party who bears the burden of proof at trial on a claim or defense must

be able to point to sufficient evidence to support each essential element of the claim or

defense in order to avoid summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986); Fed. R. Civ. P. 56(c)(1)(B).  All inferences from the evidence are to be viewed in the

light most favorable to the non-moving party.  Mountain Highlands, LLC v. Hendricks, 616

F.3d 1167, 1169-70 (10th Cir. 2010).

## III.  Discussion

### A.  Breach of Contract

The consignment agreement contains a choice-of-law provision electing the

substantive law of the state where the consigned goods are located when in the consignee's

possession—here, Florida.[2]  In order to prevail on its breach of contract claim, plaintiff must

prove: 1) a valid contract with BMS, 2) that BMS breached the contract, and 3) damages

directly caused by the breach.  Murciano v. Garcia, 958 So. 2d 423, 423 (Fla. Dist. Ct. App.

2007).  Here, there is no dispute as to the validity of the consignment agreement.  The

question is whether BMS breached the agreement and, if it did, whether such breach caused

damage to SportChassis.

BMS argues it did not breach the agreement because the agreement lacks any express

---

[2]*There is nothing in the parties' submissions to suggest that choice of law makes a difference in this case.  The pertinent legal standards appear to be the same under Florida law, Oklahoma law, and the law generally.*

provision requiring it to return the consigned vehicles upon demand by SportChassis. Indeed, BMS asserts it would have been contrary to the agreement for it to have done so and that it therefore did not breach the agreement.

As a threshold matter, it is clear that the  agreement in question is, and was intended to be, a "consignment agreement."  Paragraph three of the agreement provides:

> Consignor's consignment and/or bailment and delivery of Consigned Goods to Consignee shall be considered "Consignments" and/or "Bailments" for purposes of the Uniform Commercial Code, with Consignor retaining full title to and ownership of the Consigned Goods and the proceeds thereof while in Consignee's possession. Such consignments shall in no way constitute or give rise to a sale and transfer of ownership of the Consigned Goods to Consignee by Consignor in the ordinary course of Consignor's business.

[Doc. #47-1].  A consignment is a type of bailment where the consignor delivers possession of personal property to the consignee for the purpose of reselling the property. 8 C.J.S. Bailments § 11.  Consistent with the express language of this consignment agreement, title and ownership of the consigned property remain vested in the consignor.  *Id.*  The consignee is the agent and bailee of the consignor and must account to the consignor for the full amount of the proceeds from any resale. *Id.*  Absent a provision to the contrary in the agreement, the consignor can demand return of its property at any time.  United States v. Nektalov, 440 F. Supp. 2d 287, 298-99 (S.D.N.Y. 2006); *see also* 8 C.J.S. Bailments §§ 32-33; *cf* Dickler v. Gates, 72 So. 2d 393, 393 (Fla. 1954) (holding that a consigned ring had been converted when the consignee refused the consignor's demand for return).

BMC contends this consignment agreement contained a contrary provision, arguing that the agreement prohibited it from returning the property unless instructed to do so by

4

DCFS, the lender.  BMC relies on paragraph six of the agreement, which provides:

> Consignee additionally agrees, without condition or reservation, to follow Lender's written instructions to Consignee, when sent and received, to turn over and deliver to Lender any of the Consigned Goods then in Consignee's possession, and all proceeds representing sales of Consigned Goods. Consignor authorizes and directs Consignee to comply with Lender's instructions to the foregoing effect, which authorization and direction to Consignee may not be withdrawn or otherwise contradicted by Consignor for any reason.

[Doc. #47-1].  This language creates in the lender the power to direct the return to it of the consigned vehicles or their proceeds and, if the lender exercises that power, the consignor cannot contradict or override the lender's instructions.  However, there is nothing in the referenced language which, either explicitly or by implication, takes away the consignor's authority to demand the return of the vehicles to it absent some contrary instruction from the lender.  Here, it is undisputed that DCFS had not given any instruction as to the disposition of the vehicles at the time SportChassis sought their return.  Defendant was therefore in breach of the agreement at the time it refused SportChassis' demand for return.  Plaintiff's motion will be granted, and defendant's cross-motion denied, to that extent.

## B. Conversion

Plaintiff also seeks a summary determination that defendant's retention of the vehicles after their return was demanded constituted conversion.  "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."  Welty v. Martinaire of Okla., Inc., 867 P.2d 1273, 1275 (Okla. 1994)

(citations omitted).[3]  One can convert another's property even if that person's initial acquisition of the property was proper.  <u>Steenbergen v. First Fed. Sav. & Loan of Chickasha</u>, 753 P.2d 1330, 1332 (Okla. 1987) (citations omitted).  A bailee who wrongfully refuses to surrender property upon demand by the bailor is subject to liability for conversion. Restatement (Second) of Torts § 237 (1965).

As noted above, SportChassis is the consignor/bailor of the consigned vehicles and BMS is the consignee/bailee.  BMS's original possession of the consigned vehicles was proper because SportChassis consented to the possession.  When SportChassis demanded return of the vehicles, however, BMS's right to possession terminated and defendant converted the vehicles by refusing to return them.  Defendant's erroneous reliance on the consignment agreement's provisions as to the authority of the lender does not alter that conclusion.  *See* <u>Oklahoma ex rel. Okla. Bar Ass'n v. Cummings</u>, 863 P.2d 1164, 1174, n.51 (Okla. 1993) ("One who converts property acts at his own peril.  A mistake of fact or law is no defense.") (citations omitted); *see also* Restatement (Second) of Torts § 244. Additionally, while the eventual return of the consigned vehicles may affect the amount of plaintiff's damages, the conversion was complete when the BMS refused plaintiff's demand for return.  *See, e.g.* <u>Mitchell v. Ford Motor Credit Co.</u>, 688 P.2d 42, 45 (Okla. 1984) (holding that the measure of damages is not necessarily limited to diminution in value when property has been converted and then returned).   The undisputed facts establish that

---

[3]*The parties rely on Oklahoma law as to this issue.  As noted above, choice of law does not appear to make a difference in this case.*

defendant converted plaintiff's property at the point where the requested return was refused. Plaintiff's motion will be granted, and defendant's cross-motion denied, to that extent.

## C.  Replevin

A claim for replevin allows a plaintiff to obtain an order for recovery of property if certain requirements are met.  *See* 12 Okla. Stat. § 1571, et seq; <u>Fenton v. Young Chevrolet Co.</u>, 127 P.2d 813, 814 (Okla. 1942).  For the court to order delivery of the property, the defendant must possess that property.  *See* 12 Okla. Stat. § 1571(A)(1)(c).  Because BMS no longer has possession of the consigned vehicles, SportChassis's claim for replevin is moot.

## D.  Tortious interference

Defendant's cross-motion also seeks summary judgment as to plaintiffs claim for tortious interference with contract and/or prospective economic advantage, relying on the same general argument advanced as to the contract and conversion claims.  BMS's argument here is essentially that its retention of the vehicles was privileged, and hence not a basis for a tortious interference claim, because the agreement permitted only the lender to direct the disposition of the vehicles.  As noted above, that reading of the agreement is erroneous and not a basis for summary judgment is BMS's favor.  Further, to the extent BMS seeks summary judgment on the basis plaintiff has not produced evidence of other contracts or dealings, the obvious response is that it is not yet obliged to do so.  Plaintiff's motion did not seek summary judgment as to the tortious interference claim and therefore did not address the issue.  If defendant seeks a summary adjudication that, as a matter of undisputed fact, there were <u>not</u> any other contracts or business dealings that might be a basis for the claim,

then it is defendant's obligation to set up that question by a proper summary judgment showing.  It has not attempted to do so.   Defendant's cross-motion will be denied.

### IV.  Conclusion

For the reasons stated, plaintiff's motion for partial summary judgment [Doc. #47] is **GRANTED IN PART** as follows: the court determines that defendant breached the consignment agreement by refusing to return the vehicles upon plaintiff's instruction and that such refusal also constituted conversion.  The motion is **DENIED** as to the replevin claim, which is stricken as moot.  The tortious interference claim remains for trial, as do the questions of whether plaintiff sustained damage by reason of the breach of the agreement and the amount of any damages flowing from the breach/conversion.  Defendant's cross-motion for summary judgment [Doc. #49] is **DENIED.**

**IT IS SO ORDERED**.

Dated this 9th day of November, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE